*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0199P (6th Cir.)
File Name: 04a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BITUMINOUS CASUALTY
CORPORATION,
*Plaintiff-Appellee,*

v.

J & L LUMBER COMPANY,
INC.,
*Defendant-Appellant.*

No. 03-5217

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 01-00106—Joseph H. McKinley, Jr., District Judge.

Argued: April 20, 2004

Decided and Filed: June 29, 2004

Before: SUHRHEINRICH and GIBBONS, Circuit Judges;
LAWSON, District Judge.*

_____

* The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

_____

## COUNSEL

**ARGUED:** Jeffrey L. Freeman, JEFFREY L. FREEMAN
ATTORNEY AT LAW, Louisville, Kentucky, for Appellant.
Robert E. Maclin III, McBRAYER, McGINNIS, LESLIE &
KIRKLAND, Lexington, Kentucky, for Appellee.
**ON BRIEF:** Jeffrey L. Freeman, JEFFREY L. FREEMAN
ATTORNEY AT LAW, Louisville, Kentucky, for Appellant.
Robert E. Maclin III, Pamela A. Chesnut, McBRAYER,
McGINNIS, LESLIE & KIRKLAND, Lexington, Kentucky,
for Appellee.

_____

## OPINION

_____

SUHRHEINRICH, Circuit Judge. Defendant-Appellant
J & L Lumber Company, Inc. (J & L) appeals from the order
of the district court granting summary judgment in favor of
Bituminous Casualty Corp. (Bituminous) and denying
summary judgment in favor of J & L in this declaratory
judgment action. Bituminous brought this action against
J & L in federal district court, seeking a declaration that it was
not required to defend or indemnify J & L in a personal injury
action in state court relating to a logging accident that
occurred on November 13, 1998, while Phillip Shields,
plaintiff in the state action, was preparing to haul a load of
timber from a J & L logging site. The central issue in the
federal aJune 29, 2004ction was whether Shields was an
employee of J & L at the time of his injury and, therefore,
excluded from coverage under the terms of J & L's
commercial insurance policies with Bituminous. For the
reasons that follow, we **VACATE** the district court's order
granting declaratory judgment relief to Bituminous and

**REMAND** the case to the district court with instructions to dismiss the complaint.

## I. Background

### A. Facts

J & L is a small, family owned and operated sawmill in eastern Kentucky. Besides family members, the mill employs approximately ten to fifteen additional workers in either the sawmill or the woods. In November 1998, J & L also owned three tractor-trailer trucks and two tandems for hauling lumber and employed drivers for these vehicles.

Phillip Shields, the plaintiff in the underlying personal injury action against J & L, is a fifty-eight-year-old man who has worked in or around the logging industry most of his adult life. At different times, Shields has worked as a trucker, sawmill foreman, independent logger, and timber buyer. In the past, he worked for J & L both as the sawmill foreman and as a truck driver.

Sometime after quitting the sawmill foreman position at J & L, Shields formed a trucking company with the name Phillip Shields or Shields Trucking. He purchased two eighteen-wheeler trucks, which were garaged at his house and were maintained primarily by him. Shields also employed his own driver and incurred other expenses in connection with his trucking business, including fuel, contract labor, tolls, business telephone, and subcontractors. In 1998, Shields's trucking business yielded a gross income of $91,159.

After Shields started his trucking company, he and J & L formed a business relationship. J & L hired Shields's trucks and drivers when it needed loads hauled and did not have any available trucks or drivers of its own. Although there was no formal contract between them, J & L used Shields's trucks on a regular basis, but not exclusively. In fact, weather

permitting, Shields hauled for J & L at least once a week and usually more. On occasion, he even drove a J & L truck.

The payment arrangement between Shields and J & L was somewhat complicated. Primarily, Shields was paid by the load for his work hauling for J & L. When he drove a J & L truck, though, Shields received only driver's pay in the same manner as J & L's own drivers. In addition, from March 1998 through December 9, 1998, Shields was listed as an employee on the J & L payroll registers. He received a weekly payroll check of $250 from which taxes and health insurance premiums were withheld. He also received a check from the general account from which no withholdings were taken.

J & L described this unusual payment arrangement as an accounting device that permitted Shields to obtain health insurance coverage. The deposition testimony indicated that in March or April 1998, Wilma Myers (Myers), J & L's secretary and general office manager, and Joel Smith, an owner's son who had been insured with Blue Cross and Blue Shield, decided to change insurance providers due to an increase in premiums. To get insurance under a plan with MedQuest insurance company, however, they needed a group of at least three. Shields, who also needed insurance, became the third member of the group. Myers placed Shields on the payroll and began issuing him a weekly check from which the insurance premium was deducted. The amount of the payroll check was then deducted from the total amount due Shields for his independent hauling. Although Joel was not an employee, his insurance premium was paid directly by J & L because of his filial relationship to Jerry Smith, one of J & L's owners.

Outside of their business relationship, Shields and the owners of J & L were good friends. They had known each other for approximately thirty years. In fact, Shields characterized his relationship with Jerry and Lester Smith as

the "best of friends." He lived approximately one mile from J & L's office and would go to the J & L property usually once a day and sometimes two or three times a day to check for work or just to socialize. Shields was also good friends with Myers and the two had a social, dating relationship in the past. In addition, Shields employed Myers's son, Greg, as a driver for one of his tractor-trailers.

On the evening of November 12, 1998, Shields and Myers were in the J & L office drinking coffee when they received word that the woods crew was "blocked out" and could not continue working unless the cut timber was hauled away from the logging site. Myers and Shields arranged for Shields to take a truck and haul the timber the next morning. On the morning of November 13, 1998, Shields arrived at the J & L lumber yard and picked up a J & L truck, which was loaded with pulp wood. He delivered the load and proceeded to the site that was "blocked out." After hauling a couple of loads, Shields was injured during loading when a log dislodged from the truck and landed on him. As noted, at the time of the injury, Shields was operating a J & L truck and was picking up his third load of the day.

Both Shields and Myers stated that Shields was doing a favor for J & L at the time of the accident and was not going to be compensated for his work. Shields testified at deposition that his work on the morning of November 13 was strictly voluntary. Moreover, Shields, Myers and J & L's owners, Jerry and Lester Smith, all insisted at deposition that Shields was not an employee of J & L at the time of his injury.

### Procedural History

In July 1999, Shields filed a personal injury action in the Ohio County Circuit Court of Kentucky alleging negligence on the part of J & L or its employees related to his injuries on November 13, 1998. As one of its affirmative defenses, J & L

asserted that Shields's action was barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act.

J & L did not carry workers' compensation insurance at the time of the injury.[1] J & L did, however, carry accident coverage for its employees under an Employers' Underwriters policy. It also carried two commercial insurance policies with Bituminous Casualty Corp., a general liability policy and a commercial auto policy. At the time of injury, Shields was not covered under the Employers' Underwriters policy. Therefore, J & L requested a defense from Bituminous in the state tort action, which Bituminous provided under reservation of rights.

On or about October 23, 2000, a few weeks before the expiration of the two-year statute of limitation under the Kentucky Workers' Compensation Act, Shields filed a claim, presumably a protective filing, with the Kentucky Department of Workers' Claims, alleging that he was injured on November 13, 1998, while in the course of employment. *See* Ky. Rev. Stat. § 342.185. This claim was dismissed on January 24, 2003, after an Administrative Law Judge for the Kentucky Department of Workers' Claims determined that Shields was an independent contractor and not an employee. The Administrative Law Judge stated that, although it was a close question based upon the facts and Kentucky case law, he found the intent of the parties to be paramount in determining that Shields was not an employee.

In the underlying state personal injury action, on or about March 18, 2002, Shields filed a motion for partial summary judgment seeking to strike the affirmative defense raised by J & L that the Workers' Compensation Act was his exclusive

---

[1]This fact was certified by the Commissioner of the Kentucky Department of Workers' Claims on November 13, 2000.

remedy on the grounds that he was not an employee of J & L. J & L did not respond to this motion. On March 28, 2002, the Ohio County Circuit Court of Kentucky found that Shields was not an employee of J & L at the time of injury and struck the Workers' Compensation Act defense. Specifically, the Kentucky court found that J & L had little, if any, control over Shields, since Shields was volunteering on the day of injury and that the true intent of the parties was that Shields was not an employee.

In the meantime, on July 2, 2001, Bituminous filed the instant action in the United States District Court for the Western District of Kentucky seeking a declaratory judgment that it had no duty to defend or indemnify J & L under its policies based on exclusions contained in each policy for employees. Bituminous argued that Shields was an employee of J & L at the time of his injury and was, therefore, not covered by the policies. J & L maintained that Shields was not an employee of J & L at the time of injury. The parties filed cross motions for summary judgment.

On October 16, 2002, the district court granted summary judgment in favor of Bituminous, finding that Shields was an employee as a matter of law. The district court found, among other things, that J & L had the ultimate right to control Shields's work, that the method of payment indicated employment, and that the actions of J & L and Shields were inconsistent with their assertion that Shields was not an employee. The district court did not make a finding regarding the testimony that Shields had been working as a volunteer on the day of injury. In addition, the district court found that the October 28, 2002, Kentucky state court judgment in the negligence action did not have preclusive effect because it determined that the state court decision was not the result of an adversarial proceeding, since a finding that Shields was not an employee benefitted both Shields and J & L. J & L benefitted by the finding that Shields was not an employee because the finding entitled it to indemnity from Bituminous.

Likewise, the finding benefitted Shields because it enabled him to collect any judgment awarded in the negligence action from J & L's insurer, rather than J & L and his close friends.

J & L filed a motion to alter, amend or vacate judgment, which was denied on January 6, 2003. J & L then filed this appeal, raising four issues: whether the district court misapplied Kentucky law when it used a workers' compensation analysis rather than a common law analysis to determine whether Shields was an employee pursuant to the insurance contract; whether the district court erred in holding that Shields was an employee of J & L as a matter of law; whether the district court erred in failing to consider the explicit policy definitions; and whether the district court erred in applying federal preclusion law rather than state preclusion law to determine the effect of a prior state court judgment in a diversity action.

## II. Standards of Review

### A. Summary Judgment

This Court reviews a district court's grant of summary judgment *de novo*. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Declaratory Judgment Actions

Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). Therefore, we review the district court's decision to exercise jurisdiction for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277,

289-90 (1995); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000).

### III. Analysis

As noted, J & L raises four issues on appeal. We do not reach these issues, however, because we conclude that the district court should have declined to exercise jurisdiction over this declaratory judgment action and should have dismissed the complaint.

### A. Declaratory Judgment Actions

We have repeatedly held in insurance coverage diversity cases that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986). Further, "[s]uch actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Id.*; *see also Scottsdale Ins.* Co., 211 F.3d 964; *Omaha Property and Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278-79 (6th Cir. 1990); *Grand Trunk W.R. Co. v. Consolid. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). That is not to say that there is a per se rule against exercising jurisdiction in actions involving insurance coverage questions. *See Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247, 250 (6th Cir. 1986). Nevertheless, the factual and procedural postures of this case make exercise of jurisdiction particularly inappropriate.

### B. Propriety of Declaratory Judgment Relief in this Case

This Court generally considers five factors to determine whether a case is appropriate for declaratory judgment:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale* 211 F.3d at 968 (citations omitted). The district court did not consider these criteria; therefore, we review them for the first time on appeal.

1. *Whether the judgment would settle the controversy.*

The controversy in this case is one of insurance coverage. Bituminous seeks a declaration that it has no duty to defend or indemnify J & L based on exclusions in its insurance policies for employees. If Shields was an employee of J & L at the time of his injury, Bituminous would have no duty to defend or indemnify J & L in the state court personal injury action. If Shields was not an employee, on the other hand, Bituminous would be obligated under its contracts to defend and indemnify J & L. Thus, resolution of the controversy hinges solely on whether Shields was an employee of J & L at the time of his injury, a fact-based, and in this case very close, question of state law.

When this declaratory judgment action was filed, however, Shields's employment status was already being considered in two independent state court proceedings: the state tort action between Shields and J & L, and Shields's action before the Kentucky Department of Workers' Claims. In the state tort action, which Shields had filed against J & L on negligence grounds, J & L defended, in part, on the grounds that Shields's action was barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act. This defense was only viable if Shields was an employee of J & L at the time of the injury. Furthermore, although J & L did not have workers' compensation insurance and the exclusive remedy defense might have been dismissed on this ground alone, a determination of Shields's employment status was still necessary in the tort action because, under Kentucky law, if Shields was an employee, J & L would not be allowed to plead the defenses of assumption of the risk or contributory negligence in the state court. *See* Ky. Rev. St. § 342.690(2).

In the action before the Kentucky Department of Workers' Claims, Shields's employment status was a crucial issue because, had Shields not been an employee of J & L, he would not be eligible to collect compensation under the Act. Thus, to rule on the issues presented, all three courts had to address the identical issue of whether Shields was an employee of J & L. The declaratory judgment action in federal court could serve no useful purpose. The federal court could either reach the same conclusion as the state court, in which case the declaration would have been unnecessary and the federal litigation a waste of judicial resources, or the federal court could disagree with the state court, resulting in inconsistent judgments. Ultimately, inconsistent rulings on Shields's employment status did issue from the state and federal courts. Both state courts determined that Shields was not an employee of J & L, and the federal court determined that he was.

Moreover, a declaration of insurance coverage would not resolve the controversy. Although a declaratory judgment would settle the controversy between Bituminous and J & L, Shields was not made a party to the declaratory judgment action. Therefore, any judgment in the federal court would not be binding as to him and could not be res judicata in the tort action. Regardless of the judgment rendered in the declaratory judgment action, Shields would be entitled to pursue third-party recovery from Bituminous in Kentucky state court if he were successful in his tort action.

A declaratory judgment would not resolve the insurance coverage controversy here. On the contrary, as we have seen, the judgment in federal court declaring that Shields was an employee was contrary to two state court findings that Shields was not an employee, complicating the underlying issues of liability. The state negligence action is still proceeding and the effect that will be given to the inconsistent judgments in a collection suit by Shields against Bituminous, if any, is unclear. Therefore, this factor weighs against exercising jurisdiction.

2. *Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue.*

Like the first factor, although a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action. The question of Shields's employment status would not be resolved by the declaratory judgment. Furthermore, an adverse judgment against J & L in the state court action could still leave Bituminous subject to liability in a subsequent collection suit by Shields against Bituminous.

3. *Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata."*

This case does not present the appearance of a race for res judicata. Bituminous filed its action in federal court two years after Shields filed his initial negligence action against J & L in state court and nine months after Shields filed his claim for workers' compensation benefits. We give Bituminous the benefit of the doubt that no improper motive fueled the filing of this action.

4. *Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.*

To determine whether the exercise of jurisdiction would increase friction between federal and state courts we have considered three additional factors:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale*, 211 F.3d at 968.

First, in this case, *two* state actions, involving the same factual issue that is presented in this declaratory judgment action, were pending when this action was filed. The issue of whether Shields was an employee, the key issue in the declaratory judgment action, was a necessary component of both Shields's negligence action against J & L and his claim for workers' compensation benefits. Thus, the underlying

factual issues are important to an informed resolution of this case.

Second, both the issue of Shields's employment status and the issue of the insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve. "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Mercier*, 913 F.2d at 279.

Furthermore, resolution of the insurance controversy in this case requires a ruling on previously undetermined questions of state law. The insurance contract at issue here includes exclusions for obligations arising under workers' compensation laws. Yet, J & L did not carry workers' compensation insurance at the time of the injury. Although recently a number of courts have held that such exclusions remain applicable despite an employer's lack of insurance, there is precedent from at least two courts supporting an alternate position. *See Johnson v. Marciniak*, 231 F. Supp.2d 958, 960 (D.N.D. 2002); *Weger v. United Fire and Cas. Co.*, 796 P.2d 72, 74 (Colo. Ct. App. 1990); *Tri-State Constr., Inc. v Columbia Cas. Co./CNA*, 692 P.2d 899, 903 (Wash. Ct. App. 1984). *But see Hunt v. Hosp. Serv. Plan of New Jersey*, 162 A.2d 561 (N.J. 1960); *and Rose v. Franklin Sur. Co.*, 183 N.E. 918, 919 (Mass. 1933). Kentucky has not decided the issue.

Similarly, the parties dispute whether, if Shields is an employee, he falls within the insurance contracts' definitions of temporary worker, a category of worker that would not be excluded from coverage. The contracts define a temporary worker as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." Contract definitions of "temporary worker", identical to the definitions in the

Bituminous policies, have been interpreted in two jurisdictions, each giving different meaning to the phrase "furnished to" in the definition. Depending on the interpretation chosen, Shields could be classified as a temporary worker. *See Ayers v. C & D Gen. Contractors*, 237 F. Supp.2d 764, 768-69 (W.D. Ky. 2002), *and Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25 (Mo. Ct. App. 2003). Kentucky courts have not yet interpreted the controversial language.[2]

While a district court should not necessarily refuse to exercise jurisdiction because a case involves undetermined questions of state law, it is an appropriate consideration when determining the suitability of a case for declaratory judgment. *See Scottsdale*, 211 F.3d at 969. Where as here, there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction.

Finally, this case was brought pursuant to the federal courts' diversity jurisdiction and neither federal common law nor federal statutory law apply to the substantive issues of the case. The declaratory judgment action involved the same underlying factual issues that were pending in two state court actions. The state courts were in a better position to evaluate the factual issues because they rested solely on state law with which the state courts are better acquainted. Furthermore, resolution of the declaratory judgment action required consideration of two undetermined questions of state law and did not involve the application of any federal law. All three

---

[2] It appears from a non-final Kentucky Court of Appeals opinion that Kentucky would hold the workers' compensation exclusion applicable and would follow the interpretation of "temporary worker" found in *Tickle*. *See Indiana Ins. Co. v. Brown*, _ S.W.3d _, 2003 WL 23008788 (Ky. Ct. App. 2003). Nevertheless, under Kentucky rules a non-final opinion shall not be cited as authority in any of the courts of the Commonwealth.

of the *Scottsdale* factors indicate that exercise of jurisdiction in this case could create friction between the state and federal courts.

A friction between the courts was an actuality, not a mere possibility. Indeed, the district court's decision is contrary to two decisions rendered by the state courts on the same facts. The district court's finding that Shields was an employee was made on summary judgment, indicating the district court's belief that Shields was an employee as a matter of law. *See* Fed. R. Civ. P. 56(c) (Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Prior to the district court's ruling, however, the state court found, on the same facts, that Shields was not an employee. Thus, the district court's contrary opinion leads to the ultimate conclusion that the district court believed the state court erroneously decided a question of *state law*.

Although the district court did not, indeed could not, know what the state court would ultimately hold regarding Shields's employment status, it did know that two actions were pending in the state courts both revolving around the issue of Shields's employment status. Therefore, the district court should have recognized the possibility that it would render a judgment inconsistent with the state court on that issue. We conclude that considerations of comity weigh against exercising jurisdiction.

5. *Whether there is an alternative remedy which is better or more effective.*

Kentucky does provide a procedure for a declaration of rights. Ky. Rev. St. § 418.040 ("In any action in a court of record of this commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists,

the plaintiff may ask for a declaration of rights . . . and the court may make a binding declaration of rights . . . ."). Thus, Bituminous could have presented its case to the same court that will decide the underlying tort action. Given that the issues presented involve questions of state law only, the state court is also in a superior position to resolve the case. *See Mercier*, 913 F.2d at 278-79. In addition, a superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action. *See Manley, Bennett*, 791 F.2d at 462-63.

There is no reason to suppose that the alternate remedies available in state court would not adequately protect Bituminous's interests. We "question the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986). This factor, as well, weighs against exercising jurisdiction.

### IV. Conclusion

We find that at least four of the above five factors indicate that a federal declaratory judgment was inappropriate in this case. Although it does not appear that Bituminous filed this action for the purpose of procedural fencing or to win a race for res judicata, the lack of improper motive in filing alone cannot justify the exercise of jurisdiction when all the other factors weigh on the side of declining. *See Mercier*, 913 F.2d at 279. A declaratory judgment in this case would not settle the controversy or resolve all the underlying legal relations. Any resolution that could be achieved by the declaratory judgment would come at the cost of increasing the friction between state and federal courts. Finally, a superior remedy exists in state court.

We are cognizant of the fact that it is easier in hindsight to conclude that jurisdiction in declaratory judgment actions was improvidently granted, especially when faced with the tangle of inconsistent judgments that is presented here. Nonetheless, although the district court cannot be expected to foresee the unforeseeable, the district court must be attentive to the potential problems that can arise when there are dual, let alone triple, actions in state and federal court and should dispose of declaratory judgment actions accordingly.

Because we find that declaratory judgment relief was inappropriately granted, we do not reach the issues regarding the district court's order granting summary judgment.

For the foregoing reasons, we **VACATE** the district court's order granting declaratory judgment relief and **REMAND** the case to the district court with instructions to dismiss the complaint.