*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TRAVELERS INDEMNITY COMPANY,
                                        *Plaintiff-Appellee,*

        *v.*                                                            No. 06-6038

BOWLING GREEN PROFESSIONAL ASSOCIATES, PLC,
                                        *Defendant-Appellant,*

EVANSTON INSURANCE COMPANY,
                                        *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 05-00171—Joseph H. McKinley, Jr., District Judge.

Argued:  April 18, 2007

Decided and Filed:  July 20, 2007

Before:  MERRITT and GRIFFIN, Circuit Judges; LAWSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Matthew P. Cook, COLE & MOORE, Bowling Green, Kentucky, for Appellant.  W. David Kiser, ACKERSON & YANN, Louisville, Kentucky, Steven Allred, HELMS, MULLIS & WICKER, Charlotte, North Carolina, for Appellees.  **ON BRIEF:**  Matthew P. Cook, Dov Moore, COLE & MOORE, Bowling Green, Kentucky, for Appellant.  W. David Kiser, ACKERSON & YANN, Louisville, Kentucky, Steven Allred, HELMS, MULLIS & WICKER, Charlotte, North Carolina, Timothy L. Edelen, BELL, ORR, AYERS & MOORE, Bowling Green, Kentucky, for Appellees.

_____

## OPINION

_____

        GRIFFIN, Circuit Judge.  In this insurance coverage dispute, Bowling Green Professional Associates ("Bowling Green"), an out-patient drug treatment facility in Kentucky, appeals a declaratory judgment and summary judgment opinion and order of the district court.  The crux of

_____

        [*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

this declaratory judgment action is whether either of two liability policies issued to Bowling Green by two different insurers, Travelers Indemnity Company of Connecticut ("Travelers"), and Evanston Insurance Company ("Evanston"), provide coverage to Bowling Green for a wrongful-death lawsuit brought in Kentucky state court. Following Bowling Green's demand to its insurers for litigation defense and liability indemnity, Travelers filed this action in federal district court in the Western District of Kentucky seeking a declaratory judgment of whether it owed a duty to defend or indemnify Bowling Green in the underlying state court action. Evanston cross-claimed seeking a similar declaration regarding the Caudill estate claims only. The district court exercised jurisdiction and granted the insurers' motions for declaratory judgment. Bowling Green timely appealed.

For the reasons set forth below, we hold that the district court abused its discretion in exercising declaratory judgment jurisdiction. Accordingly, we vacate the order and judgment of the district court and remand with instructions to dismiss for lack of jurisdiction.

I.

The following underlying facts are not in dispute. In November 2004, Jonas Wampler received a methadone treatment as part of an ongoing treatment plan at the Bowling Green clinic in Hazard, Kentucky. Following the treatment, he left the clinic in his car. As he was driving, Wampler crossed into the oncoming traffic lane and struck head-on another vehicle, driven by Stephanie Caudill. Both Wampler and Caudill perished in the collision. In a state court complaint filed in August 2005, Caudill's estate asserted a claim for wrongful death against both Bowling Green and the Wampler estate. In response, Wampler's estate asserted a third-party claim for wrongful death in the same state court against Bowling Green and the physician, Dr. Raza, who administered the methadone treatment to Wampler.

Following the filing of the claims by Caudill's and Wampler's estates, Bowling Green sought insurance defense and indemnity from both Evanston and Travelers pursuant to the aforementioned insurance policies. Evanston agreed to defend the Wampler claims, but denied coverage for the Caudill action on the grounds that it did not present a claim for injury to or death of a Bowling Green patient. Travelers agreed to temporarily defend both the Wampler and Caudill estate actions, pursuant to a reservation of rights. Thereafter, Travelers instituted the present action in federal district court against both Bowling Green and Evanston to determine its duties, if any, under its policy. Likewise, Evanston cross-claimed and counter-claimed in an effort to limit its obligations to Bowling Green. All three parties filed cross-motions for summary judgment to resolve the matter. In its memorandum opinion and order, the district court granted a declaratory judgment in favor of both insurers, holding that Evanston owed no duty to defend or indemnify Bowling Green in the Caudill action, and that Travelers owed no duty to defend or indemnify any of the claims asserted by the Caudill and Wampler estates. Bowling Green timely appealed.

*The Insurance Policies*

Both Travelers and Evanston have insurance contracts with Bowling Green. Evanston issued Bowling Green a *professional* liability insurance policy covering professional negligence. Evanston does not dispute that it has a duty to indemnify and defend Bowling Green in the suit by Jonas Wampler's estate because Wampler was a patient and the policy clearly covers claims by patients.[1] It does contest that it has a duty to indemnify and defend Bowling Green and Dr. Raza against Caudill's estate. Travelers was Bowling Green's *general* liability insurance provider. Travelers

---

[1] Evanston disputes any duty to indemnify Bowling Green or Dr. Raza for claims of punitive damages.

contests that it has a duty to defend Bowling Green against the suits brought by Caudill's and Wampler's estates.

### 1. *Evanston's Policy*

The policy issued by Evanston prescribed indemnification for "personal injury by reason of any negligent act, error or omission in professional services rendered . . . ." As defined by the policy, "personal injury" means "any physical or mental injury to or death of any patient . . . ." With respect to the duty to defend, the policy states that Evanston "shall defend any claim or suit against the Insured seeking damages to which this insurance applies . . . ." After exercising jurisdiction, the district court concluded that there was no ambiguity in the language in the professional liability policy disclaiming coverage for claims of injury by non-patients of the clinic and that Evanston was not required to defend or indemnify Bowling Green against Caudill's estate because Caudill was not a "patient" of the clinic.

Further, the district court concluded that the policy was not ambiguous in its exclusion of coverage for punitive damages claims by Wampler's estate. In the policy's "Exclusions" section, it states that:

This policy does not apply:

. . .

(f) to punitive or exemplary damages . . . except, that if a suit shall have been brought against the Insured for a claim falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages . . . then the Company will afford a defense to such action, without liability, however, for such punitive or exemplary damages . . . .

. . .

(l) to any claim arising out of general liability . . . .

On appeal, Bowling Green argues that Evanston should defend the clinic in the suit by Caudill because: (1) the policy with Evanston is ambiguous regarding whether Evanston is required to defend Bowling Green in an action by a third party like Caudill; (2) Bowling Green "reasonably expected" that the Evanston policy would require Evanston to defend it in a situation like the one herein; and (3) public policy requires Evanston to defend the clinic in that to decide otherwise would result in drug clinics being unwilling to operate in Kentucky.

In response, Evanston argues that the plain language of the policy clearly excludes a duty to defend a suit by a non-patient, and Caudill was not a patient of Bowling Green. Further, Evanston argues that Bowling Green had no reasonable expectation that its medical malpractice policy would require Evanston to defend against a suit brought by a third party like Caudill. Finally, Evanston rejects the assertion that public policy requires it to defend the clinic and urges this court to rely solely upon insurance law and contract interpretation.

### 2. *Travelers' Policy*

Travelers issued a general liability insurance policy to Bowling Green during the relevant time period, providing among other things, "Commercial General Liability Coverage." This coverage is defined generally:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

In granting Travelers' motion for summary judgment, the district court concluded that Travelers owed no duty to defend or indemnify Bowling Green by virtue of an exclusion in the policy for "Health or Cosmetic Services." The exclusion provides:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1.    The rendering or failure to render:

a.    Medical, surgical, dental, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;

b.    Any health or therapeutic service, treatment, advice or instruction;

. . .

3.    The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances . . . .

The district court rejected Bowling Green's argument that the exclusion did not cover Caudill's estate's negligence claims and, accordingly, granted Travelers' motion for summary judgment. On appeal, Bowling Green argues that Travelers, as the provider of a general liability policy, is responsible for defending claims arising from negligence unrelated to medical treatment at the clinic. Bowling Green contends that any negligence in the act of allowing patient Wampler to leave the premises after his methadone treatment and drive his car was unrelated to any medical treatment or care and should be viewed independently from the medical treatment.

II.

Neither party raised jurisdictional issues in their appellate briefs. Nevertheless, we appropriately raised subject-matter jurisdictional issues sua sponte at oral argument and invited the parties to file supplemental briefs on the issue. *Ohio v. Doe*, 433 F.3d 502, 506 (6th Cir. 2006). The Declaratory Judgment Act provides that a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added). This language affords the district court "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). We review the district court's decision to exercise jurisdiction over a declaratory judgment request for an abuse of discretion. *Adrian Energy*, 481 F.3d at 421 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000)).

In applying this general standard, we have long considered the five factors enumerated in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984):

(1)    whether the declaratory action would settle the controversy;

(2)     whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3)     whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4)     whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5)     whether there is an alternative remedy which is better or more effective.

*Id.* More recently, in *Scottsdale*, we recognized three additional factors that bear on whether a declaratory action would increase friction between federal and state courts:

(1)     whether the underlying factual issues are important to an informed resolution of the case;

(2)     whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3)     whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co.*, 211 F.3d at 968 (citing *Wilton*, 515 U.S. at 277). The district court considered these factors and ultimately concluded that they weigh in favor of the exercise of declaratory judgment jurisdiction. We disagree.

Examining the first two factors, whether the judgment would settle the controversy and whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue, the district court held that while a declaratory judgment would not end the controversy between Wampler, Caudill, and Bowling Green, it would settle the controversy regarding the scope of insurance coverage under the Travelers and Evanston policies and clarify any duty to defend Bowling Green. The district court therefore found the first two factors to favor the exercise of federal court jurisdiction. We disagree. The district court's decision could not settle the controversy in the underlying state court litigation; thus, the first factor favors the court not exercising jurisdiction. Additionally, although a declaratory judgment would "clarify the legal relationship between [the insurer and the insured] pursuant to the insurance contracts, the judgment would not clarify the legal relationship between [the parties] in the underlying state action." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004); *see also Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 275 (6th Cir. 1990) (first two of five factors not met in a situation in which the related state court litigation was not an action against the insured in which the insurer was a party), *abrogated on other grounds by Wilton*, 515 U.S. at 289-90.

Granting the declaratory relief sought by Evanston and Travelers settles the scope of insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to settle the controversy or "clarify the legal relationship" between the other parties. Significantly, parties who may be potentially affected by the judgment, including the estates of Wample and Caudill, were not joined in the federal district court action and are not parties now. As non-parties, the estates of Wample and Caudill are not bound by the entry of a declaratory judgment. Thus, we conclude that the first two factors weigh against federal jurisdiction.

With respect to the third factor, the district court determined correctly that no facts demonstrate that the declaratory judgment action by Travelers was an attempt at "procedural fencing" or exude the appearance of a "race" to judgment. Although no improper motive prompted this action, this factor is neutral.

Examining the fourth factor, the district court held that the state court would not be in a significantly better position to evaluate the terms or exclusions in the insurance contracts because both forums would apply Kentucky state law. However because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues.

First, the issue raised – whether any negligence on the part of Bowling Green in allowing Wampler to leave the facility and drive his car was part of its medical treatment of Wampler, and is therefore "medical" negligence, or whether such action was a separate act of ordinary negligence – involves purely questions of Kentucky law. Negligence questions are largely reserved to the states. Here, it appears that the issue has not been squarely resolved under Kentucky law. The district court relied on the case of *Ratliff v. The Employers' Liab. Assur. Corp.*, 515 S.W.2d 225 (Ky. Ct. App. 1974), to hold that "[t]he alleged negligent act of permitting Wampler to leave the facility after treatment was not independent and mutually exclusive of the administration of the methadone, but was instead related to [Bowling Green's] medical treatment of Wampler." However, in *Ratliff*, Kentucky's highest court (at the time, the Court of Appeals was Kentucky's highest court) determined that the general liability insurer was not responsible for a judgment for personal injury suffered by a man who fell while treating as an *in-patient* at a hospital. The court concluded that the hospital's nurses were required to exercise their "expert professional ability" in determining whether Ratliff was capable of returning safely from the nurse's station to his bed. *Ratliff*, 515 S.W.2d at 230. Significant differences exist between a fall by a patient confined to the continuing care of hospital staff and one who causes injury to another in a distant location after receiving treatment and leaving the medical facility.

Second, issues of "insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous*, 373 F.3d at 815. We have often observed that "'[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" *Id.* (quoting *Mercier*, 913 F.2d at 279). This concern has been frequently applied in cases of insurance contract interpretation and we have held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits. *See, e.g., Bituminous*, 373 F.3d at 812-13; *Scottsdale*, 211 F.3d at 968-69; *Employers' Fire Ins. Co. v. Danis Bldg. Constr. Co.*, No. 99-3982, 2000 WL 1234321 (6th Cir. Aug. 22, 2000) (unpublished); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Mercier*, 913 F.2d at 277; *Am. Home Ass. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462 (6th Cir. 1986).

The troubling lack of clearly-settled Kentucky precedent on the issue is compounded by the lack of a factual record. The record before this court does not reveal what Wampler may have told the staff about his ability to drive, whether he concealed any impairment, or whether he told the staff that he had a ride waiting for him outside the clinic. The factual record is inadequate to make a determination of whether the alleged negligence was a lapse in medical judgment by the clinic staff.

The three additional factors identified in *Scottsdale* and applied as subsections of the fourth factor in *Bituminous* also weigh in favor of dismissal of the federal court action. *See Bituminous*, 373 F.3d at 814. The underlying factual issues in the state court litigation may be very important in establishing whether any negligence on the part of Bowling Green would be considered medical

negligence related to Wampler's treatment or a separate act of ordinary negligence. The parties agreed to submit the motions for summary judgment on the declaratory judgment without discovery, resulting in insufficient facts to know what transpired inside the clinic on the morning of November 13, 2004, or to legally determine whether the events constituted medical negligence within the meaning of Travelers' insurance policy. In addition, we conclude that the "close nexus" between the underlying factual issues and state law and public policy favor a decision by the state court instead of the federal court. This is not a case where federal law will come into play, and, therefore, a state court forum is preferable.

Finally, with respect to the fifth factor, the district court held that alternative remedies to federal jurisdiction existed pursuant to Kentucky's declaration of rights procedure set forth in KY. REV. STAT. § 418.040. Further, insurers could file an indemnity action at the conclusion of the underlying state action. As a result, the district court held that this factor weighed against federal discretionary jurisdiction. We agree.

III.

For these reasons, we vacate the district court's judgment and order and opinion granting summary judgment and remand with instructions to dismiss for lack of jurisdiction.