NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0040n.06

No. 21-5652

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BANKS ENGINEERING, INC., | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **FILED** |
| v. | ) | Jan 24, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |
| NATIONWIDE MUTUAL INSURANCE | ) | |
| COMPANY; NATIONAL CASUALTY | ) | ON APPEAL FROM THE UNITED |
| COMPANY, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Defendants-Appellants. | ) | KENTUCKY |
| | ) | |

Before:  SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Banks Engineering, Inc. was sued in a Kentucky court for, among other things, committing professional negligence.  It sought defense and indemnity from its professional-liability insurer, Nationwide Mutual Insurance Company.[1]  After Nationwide denied coverage, Banks brought this declaratory action in state court, and Nationwide removed it to the U.S. District Court for the Eastern District of Kentucky.  That court declined to exercise jurisdiction and remanded the case to state court, which Nationwide now appeals.  Because the district court did not abuse its discretion, we affirm.

**I.**

We first recount the facts underlying the Kentucky suit against Banks before turning to the facts directly relevant here.

---

[1] The insurance policy was underwritten by co-defendant National Casualty Company.  For simplicity's sake, we refer to both defendants as "Nationwide."

*State-Court Action.* In 2018, LPW Redevelopment owned a piece of real property in Nicholasville, Kentucky, which was divided into four parcels. LPW contracted with Banks to provide engineering and consulting services related to developing Parcel 3 into a residential subdivision. Banks prepared for LPW, among other things, a preliminary subdivision plat and final development plan for Parcel 3.

Those documents, as well as LPW's previously approved and recorded construction plans for Parcel 2, showed a box culvert (*i.e.*, a stream crossing) within Parcel 2. The Nicholasville Planning Commission approved LPW's construction plans for Parcel 2 without requiring LPW to provide surety for construction of the box culvert. LPW partially developed Parcel 2, but it did not build the box culvert.

In 2018, Boone Development, LLC purchased Parcel 3 from LPW. When Boone purchased the parcel, it assumed LPW's rights and obligations under LPW's contract with Banks regarding the development of Parcel 3. Boone also agreed to pay Banks for the engineering services needed to finish developing Parcel 3.

In July 2019, Boone's principal met with the Nicholasville City Engineer to discuss the sureties Boone would be required to post before the Planning Commission approved the development plans for Parcel 3. The engineer said that Boone—despite not owning Parcel 2— would be required to post a surety of roughly $200,000 for construction of the box culvert on Parcel 2. The Commission ultimately explained that Boone was responsible for the culvert (regardless of whether Boone or LPW owned the land under the planned culvert) because "it was depicted on the Preliminary Plat and the construction plans for Parcel 3"—the documents Banks had prepared earlier. Hence, Boone claims Banks wrongly obligated it to foot the bill for the culvert.

In March 2020, Boone and a related entity sued Banks, the Planning Commission, several of its Commissioners, its Chairman, its Planning Director/Administrative Officer, and the City Engineer in Kentucky court (the "State-Court Action"). Boone raised a variety of state and federal constitutional, tort, contractual, and equitable claims against those defendants, all of which relate to whether Boone must either post surety or pay for the box culvert. As relevant here, Boone alleged three claims against Banks: (1) breach of contract because Banks refused to continue working for Boone to fully develop Parcel 3, (2) unjust enrichment for money previously paid to Banks, in part by LPW, for work yet to be performed, and (3) professional negligence in preparing the construction plans, if Boone is ultimately required to post surety or pay for the box culvert. The State-Court Action apparently remains pending, although the parties' briefing here is sparse on that point.

*Banks's Declaratory Action Against Nationwide.* Banks purchased an Architects and Engineers Professional Liability Insurance Policy from Nationwide.[2] Shortly after Boone filed the State-Court Action, Banks notified Nationwide of the lawsuit and requested coverage under the Policy. In April 2020, Nationwide denied coverage, asserting that Boone's claim of professional negligence was not made during the Policy's coverage period, Banks's alleged professional negligence occurred prior to the Policy's coverage period, and Banks failed to disclose the possibility of the claim when it applied for the Policy.

Banks then filed this action, which seeks a declaration that Nationwide is "obligated to provide insurance coverage, including defense and indemnity[,] to [Banks] pursuant to the terms and conditions of the Policy." Banks filed the suit in a Kentucky court, but Nationwide timely

---

[2] The Policy provides defense-and-indemnity coverage for claims made and reported between December 7, 2019, and December 7, 2020, and retroactively applies to any claim arising from a wrongful act occurring on or after December 7, 2014.

removed it to the U.S. District Court for the Eastern District of Kentucky based on diversity jurisdiction. Banks thereafter moved to remand the case back to state court, arguing that Nationwide failed to adequately prove that the amount in controversy exceeded $75,000, or, alternatively, that the court should decline to exercise its discretion to hear the declaratory action.

The district court rejected the first argument but accepted the second. After analyzing the factors that guide whether a federal court should exercise jurisdiction over a declaratory action, *see generally Grand Trunk W.R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323 (6th Cir. 1984), it granted Banks's motion to remand. Nationwide timely appealed.

## II.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). That "may" goes a long way—it gives district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). And for good reason: "[d]istrict courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp.'" *Id.* (quoting *Wilton*, 515 U.S. at 289).

We thus ask only whether the district court abused its discretion in deciding to hear (or not hear) a declaratory-judgment action. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014). To guide that discretion, district courts apply the *Grand Trunk* factors:

(1) Whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]

a. whether the underlying factual issues are important to an informed resolution of the case;

b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.* at 759 (alteration in original) (quoting *Flowers*, 513 F.3d at 554, 560); *see also Grand Trunk,* 746 F.2d at 326 (primary factors); *Bituminous Cas. Corp. v. J. & L Lumber Co., Inc.*, 373 F.3d 807, 814–15 (6th Cir. 2004) (subfactors). "'[W]e have never indicated' the relative weights of th[ose] factors"—we leave that too to the district court's discretion, to be judged based on the facts of each case. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Flowers*, 513 F.3d at 563).

Given that substantial discretion, our review is quite modest. "The essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* at 402 (alteration omitted) (quoting *Hoey*, 773 F.3d at 759). Three core lodestars guide "our own review"—"efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 760.

Practically speaking, so long as the district court offered a reasoned basis for declining jurisdiction, we generally do not substitute our judgment for its. For example, reversal is not

warranted just because we think, based on the facts of the case, that the district court wrongly emphasized one or more of the *Grand Trunk* factors. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968–69 (6th Cir. 2000). Nor is it sufficient that another court, faced with the same facts, reasonably might have reached a different result. *See id.*; *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 443 (6th Cir. 2018) (citing *Hoey*, 773 F.3d at 760–61). At bottom, we are "reluctant to reverse a district court's decision to decline jurisdiction." *Mass. Bay*, 759 F. App'x at 442. Only rarely have we done so—by our count, just once—under the post-*Wilton* abuse-of-discretion standard. *See Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) (finding that district court abused its discretion by failing to apply the *Grand Trunk* factors and providing "only three lines of analysis explaining its decision to decline jurisdiction").

**III.**

The district court here dutifully trekked through the *Grand Trunk* factors and opted to remand the case to state court. We first recount the district court's analysis before turning to Nationwide's objections to it.

**A.**

As for the first and second *Grand Trunk* factors, the district court found that a declaration likely would neither "end the controversy" nor "provide complete clarity regarding the parties' legal relations." The court reasoned that, while a declaration could "settle some questions regarding contract interpretation," it was also "likely that other questions would remain outstanding until the underlying state-court claims against Banks are resolved." For one thing, because the plaintiffs in the State-Court Action are not parties to this suit, the court reasoned that the declaration sought by Banks would not bind them. For another, it noted that common factual issues were implicated by both actions—*e.g.*, the timing and substance of the engineering services

that Banks provided for Boone and LPW.  Those factual issues were not hypothetical; the parties' joint Rule 26(f) planning-conference report anticipated that discovery would be needed as to "the events and circumstances leading to the allegations in the [State-Court Action] against [Banks]." Because of these overlapping factual issues and non-overlapping parties, the court found that the first two factors both weighed in favor of remand.  We find no error in that.  *See Travelers Indem. Co. v. Bowling Green Pro. Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (finding the absence of state-court parties in the declaratory action weighed against exercising jurisdiction).

The district court next found that the third factor—whether this case involves procedural fencing or a race to *res judicata*—"points toward exercising jurisdiction."  It noted that Banks, as the insured, is the declaratory plaintiff here; Banks filed the suit in state court, and Nationwide removed it to federal court.  The court found that that distinguishes this case from those less fit for a federal declaratory judgment—those in which "declaratory plaintiffs . . . file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff'" to "acquir[e] a favorable forum" in federal court.  *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).

We agree that that's a meaningful distinction, but we might quibble with the conclusion; this factor seems neutral at best.  Banks, as the natural plaintiff in a coercive suit against Nationwide for declining insurance coverage, wants to be in state court and filed the case there first.  It might be one thing if Nationwide was the first to file in federal court (and there otherwise was no evidence of procedural fencing).  *See, e.g.*, *Flowers*, 513 F.3d at 558.  But it seems unfair to give Nationwide a point on its *Grand Trunk* scorecard simply for waiting for Banks to file and then removing that case to its preferred forum.  We thus think this factor is neutral.  *See Cole's*

*Place*, 936 F.3d at 399 (noting that "we often find that the factor is 'neutral'" when "there is no evidence of procedural fencing" (quoting *Travelers*, 495 F.3d at 272)).

The court then addressed the fourth factor (and its three subfactors): whether hearing the declaratory action would increase friction between federal and state courts, because the declaratory action (a) requires the finding of facts already being found in state court, (b) is thus best heard by the state court, and (c) implicates state, rather than federal, policies. In the district court's view, this case checked all three boxes.

The court first noted that Banks's declaratory suit does not appear to raise purely legal questions, but rather likely "require[s] making factual findings that might conflict with similar findings made by the state court." *Flowers*, 513 F.3d at 560. Second, it cited to *Travelers*, in which we observed that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" 495 F.3d at 273 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 815). Third, it identified no federal policies implicated by Banks's case, and it noted that Kentucky courts are best situated to "identify and enforce the public policies that form the foundation of insurance regulation." Accordingly, it found that the fourth factor favored remand.

We see no error in that analysis. The parties provided (both here and below) scant briefing as to the status and scope of the State-Court Action, so the court was within its discretion to err on the side of caution regarding the first subfactor. *See Mass. Bay*, 759 F. App'x at 439–41; *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278–79 (6th Cir. 1990) (reversing exercise of jurisdiction where issuing declaration was premature and could interfere with ongoing state proceedings), *abrogated on other grounds by Wilton*, 515 U.S. at 289–90. The court's analysis of the second and third

subfactors likewise fits within our cases. *See Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 815–16. We thus agree that the fourth factor favored remand.

As for the fifth factor—whether an alternative remedy is available to a federal declaratory action—the court found that, because Banks could (and did) seek a declaration in Kentucky's courts under Ky. Rev. Stat. § 418.040, this factor also weighed in favor of remand. We agree. *See, e.g.*, *Cole's Place*, 936 F.3d at 401 (finding the same, considering Ky. Rev. Stat. § 418.040); *Travelers*, 495 F.3d at 273 (same); *Bituminous*, 373 F.3d at 816–17 (same).

Balancing the five factors, the district court found that "[t]hey point heavily toward remand;" it reasoned that "this case is so closely connected with matters being litigated in state court" and that the State-Court Action "has been pending for more than a year and it is clear that the state courts and the parties have invested substantial time and resources in the matter." Based on that finding, and reasoning that federal courts should exercise jurisdiction over declaratory actions "only when doing so would advance the interests of justice or preserve the resources of the parties," the court granted Banks's motion to remand.

We find no reversible error. The court took "a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair," and its conclusions reflect our core considerations of "efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759, 760. At the very least, the court's reasoned exercise of discretion did not come close to the rare case that warrants reversal. *See Byler*, 823 F. App'x at 365 (finding abuse of discretion due to "[t]he district court's minimal analysis and its disregard of the *Grand Trunk* factors"); *see also Mass. Bay*, 759 F. App'x at 442 (noting our "reluctan[ce] to reverse a district court's decision to decline jurisdiction"). The court did not, therefore, abuse its discretion in remanding Banks's action.

**B.**

Nationwide disagrees, devoting most of its briefing to the first two *Grand Trunk* factors. It starts by arguing that the court overlooked two facts, not at issue in the State-Court Action, that "would be dispositive of Banks's action and thus settle the controversy." First, Nationwide contends it has no duty to defend or indemnify Banks under the Policy because "the [State-Court Plaintiffs'] claim against Banks' [sic] was first made prior to the Policy period"—a fact that, Nationwide says, "is not at issue in the" State-Court Action. Second, Nationwide argues it has no duty to defend or indemnify under the Policy because "Banks failed to identify the [State-Court Plaintiffs'] claim on its application" for the Policy. In Nationwide's view, because those facts would be dispositive of Banks's declaration for insurance coverage, the district court erred by finding that a declaration would not "settle the controversy."

However strong those arguments may be, the problem is that Nationwide did not make them below.[3] Had Nationwide done so, the district court may have reached a different conclusion or weighed the *Grand Trunk* factors differently. But we cannot say that the court abused its discretion by failing to apprehend facts or arguments that it was not asked to consider.

Nationwide next claims the district court misidentified two factual issues as overlapping with the State-Court Action: (1) *when* Banks's alleged professional negligence occurred, and (2) the nature of Banks's professional services regarding the box culvert. As to the first, Nationwide argues that it's the *substance*, not timing, of Banks's work that is *currently* at issue in the State-Court Action. Fair enough. But, as the district court correctly reasoned, the question of

---

[3] In its opposition to Banks's motion to remand, Nationwide provided a conclusory, single-sentence argument as to the first two *Grand Trunk* factors: "Resolution of the question of whether Nationwide has a duty to defend Banks in the State Court Action and to indemnify it for any damages will settle the controversy between Banks and Nationwide and will clarify the current legal obligations between them."

timing would inevitably arise in the State-Court Action, even if it's not at issue now: (a) if Boone is held liable for the cost of the box culvert, (b) Boone would seek to impose liability on Banks, and (c) Banks would then seek indemnification from Nationwide, which would require determining whether Banks's alleged professional negligence (timing-wise and substantively) is covered by the Policy. *See Hoey*, 773 F.3d at 760.

As for the second fact, Nationwide faults the district court for not explaining specifically how the nature of Banks's professional services is implicated by *both* this action and the State-Court Action. But the district court, in issuing a declaration as to insurance coverage, would of course have to determine whether Banks's alleged negligence is covered by the Policy—which would in turn call for examining the services that Banks (allegedly negligently) provided to Boone, facts directly at issue in the State-Court Action. Further, the district court did not pull this fact out of nowhere; it relied on Banks's and Nationwide's *joint* Rule 24(f) planning report, which anticipated discovery regarding "the events and circumstances leading to the allegations in the [State-Court Action]" against Banks. In other words, Nationwide itself admitted, in the joint planning report, that the declaratory action would involve a factual inquiry that overlaps with the State-Court Action. We cannot fault the district court for relying on that.

Nationwide's arguments as to *Grand Trunk* factor four and its three subfactors fail to move the needle.[4] Its arguments as to the first subfactor are largely a redux of previous ones—that the court misidentified factual issues as overlapping with the State-Court Action because this case involves only insurance-coverage issues not currently being litigated in state court. We reject those for the reasons stated above. Nationwide also argues that the second and third subfactors have "less force" here—federal courts in Kentucky "routinely" exercise jurisdiction over

---

[4] Nationwide does not address *Grand Trunk* factor three.

declaratory actions like this, and this case (according to Nationwide) presents no novel questions of state law. Maybe so, but that still "does not necessarily mean" the federal court was in a *better* position than the state court to resolve the "factual issues relevant to the coverage question." *Cole's Place*, 936 F.3d at 401. The second subfactor therefore favored remand. Finally, Nationwide argues that the third subfactor weighed against remand because the legal issues in this case "can be reasonably predicted" given how "well-developed" Kentucky insurance law is. But that just as equally supported remand—"state courts are best situated to identify and enforce the public policies that form the foundation of [insurance] regulation." *Flowers*, 513 F.3d at 561 (quoting *Bituminous*, 373 F.3d at 815); *Cole's Place*, 936 F.3d at 401 (recognizing our adherence to this principle "even in cases where state law has not been difficult to apply"). And, as stated above, Banks's case implicates no federal policies. The district court thus did not abuse its discretion in finding the fourth *Grand Trunk* factor favored remand.

As for factor five, Nationwide argues that the mere existence of Kentucky's declaratory-judgment remedy (as an alternative to the federal declaratory judgment) does not counsel against exercising jurisdiction. We disagree, as we have before—and in the specific context, no less, of Kentucky's declaratory-judgment remedy. *Cole's Place*, 936 F.3d at 401 (considering Ky. Rev. Stat. § 418.040); *Travelers*, 495 F.3d at 273 (same); *Bituminous*, 373 F.3d at 816–17 (same).

Moreover, Nationwide fails to adequately grapple with two key points that undercut most of its arguments here: (1) no plaintiff in the State-Court Action is a party to this suit, which means any declaration will not fully settle the controversy, *see Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 814; *Cole's Place*, 936 F.3d at 408 (White, J., dissenting) (citing *Travelers* and *Bituminous* and reasoning that the first two *Grand Trunk* factors weigh against exercising jurisdiction when the state-court plaintiff is not a party to the federal action); and (2) this case

involves the denial, not exercise, of jurisdiction—a decision that we are generally "reluctant to reverse," *Mass. Bay*, 759 F. App'x at 442 (citing *Roumph*, 211 F.3d at 969).  Considering that, we are convinced that the district court did not abuse its discretion in declining jurisdiction.

## IV.

For the foregoing reasons, we **AFFIRM**.