NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0806n.06

No. 11-2083

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) ) ) | **FILED** *Jul 26, 2012* LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| A. ERIC BOHMS; ELLIE BOHMS; JACOB BOHMS; and KATHLEEN CUDNIK, | ) ) ) | THE WESTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) ) ) | OPINION |

Before:  COLE and DONALD, Circuit Judges and SARGUS, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge**.  This case arises from Liberty Mutual Fire Insurance Company's ("Liberty Mutual") denial of an insurance claim following an automobile accident.  Upon receiving notice that Defendant Kathleen Cudnik intended to file a bad faith claim in Florida court, Liberty Mutual filed an action in the Western District of Michigan seeking a declaratory judgment regarding the parties' rights and obligations under a policy of insurance.  The district court declined to exercise its discretionary jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,  and dismissed Liberty Mutual's action.  Liberty Mutual appealed.  For the reasons that follow, we **AFFIRM**.

---

[*]  The Honorable Edmund A. Sargus, Jr., United States District Court for the Southern District of Ohio, sitting by designation.

**I.**

The facts relevant to the present appeal are not in dispute. Liberty Mutual issued to A. Eric Bohms ("Mr. Bohms") an automobile insurance policy that took effect on October 10, 2002. The policy applied to four "covered autos," including a 1994 Chrysler New Yorker. Mr. Bohms was the "named insured," and the policy listed as other "operators" of the vehicles Ellie Bohms ("Mrs. Bohms") and Erica Lynn Bohms. The policy also covered "family members," defined in the policy as persons "related to [the insured] by blood, marriage or adoption who [are] *resident[s] of your household*." (emphasis added.) The policy provided that all covered vehicles were garaged at the address of the named insured. Mr. Bohms resides in Mattawan, Michigan.

On September 25, 2003, Mr. Bohms's son, Jacob Bohms ("Jacob"), was the driver of a 1998 Ford Mustang involved in a one-car accident in Florida. The owner of the car, Marianne Pluchino, is the mother of Jacob's friend, Dustin, who apparently gave Jacob permission to drive the car on the date of the accident. A passenger in that vehicle, Nicholas Cudnik, died as a result of injuries sustained in the accident.

Jacob made a claim for coverage under his father's Liberty Mutual policy. After an investigation, Liberty Mutual denied the claim based on its determination that Jacob was not insured under the policy and that he was not driving a "covered auto" as defined by the policy. In a December 3, 2003, denial letter, Liberty Mutual advised Mr. Bohms that Jacob was not named in the policy and that he did not qualify as a "family member" because he had not resided in Mr. Bohms's home in over four years. In fact, Jacob had apparently been living in Florida for a year and a half leading up to the accident. Additionally, the Mustang that Jacob was driving at the time of the

accident was not listed in the policy declaration and, therefore, Liberty Mutual took the position that it was not a "covered auto." Based on these circumstances, Liberty Mutual denied Jacob's claim for coverage. Neither Jacob nor Mr. Bohms contested the denial.

In September 2005, Kathleen Cudnik, on behalf of Nicholas's estate, filed suit in Florida state court against Jacob, Marianne Pluchino and her son Dustin, and Safeco Insurance Company, which insured the Mustang. That lawsuit ended with Jacob entering into a consent judgment with Nicholas's estate for $800,000. Jacob assigned to the estate any rights he may have under the Liberty Mutual policy.

On September 9, 2010, counsel for Nicholas's estate sent a Civil Remedy Notice of Insurer Violation form to Liberty Mutual. This Notice is required by Florida statute as a prerequisite to filing a bad faith suit against an insurer. *See* Fla. Stat. § 624.155(3)(a). Pursuant to the statute, a potential claimant must provide the insurer with sixty days' written notice of an alleged violation before that claimant can bring a bad faith suit. *Id.* If the alleged violation is remedied within sixty days, the claimant will have no cause of action for bad faith against the insurer. *Id.* at § 624.155(3)(c). The Notice was accompanied by a letter that raised, for the first time, the allegation that Jacob was entitled to coverage under the Liberty Mutual policy because the borrowed Mustang was a "temporary substitute" for the 1994 Chrysler New Yorker.[1] The letter alleged that Mr. and Mrs. Bohms had permitted Jacob "to use [the] New Yorker and take it to Florida where [he] would

---

[1] Pursuant to the policy, "covered auto" included "[a]ny auto . . . you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its: a. breakdown; b. repair; c. servicing; d. loss; or e. destruction."

be attending college." The letter further alleged that the New Yorker had broken down in the weeks before the accident and that Jacob had borrowed the Mustang to use while the New Yorker was out of commission.

On the fifty-ninth day of the sixty-day notice period, Liberty Mutual filed this lawsuit in United States District Court for the Western District of Michigan. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the suit sought declaration of the parties' respective rights and obligations under the Liberty Mutual policy. Cudnik timely answered the complaint and countersued for breach of contract, bad faith, fraudulent misrepresentation, and breach of fiduciary duties. The Bohms defendants defaulted. Liberty Mutual filed a motion to dismiss Counts II-IV of Cudnik's counterclaim (all claims but breach of contract), then answered the counterclaim. Nearly two months later, on March 11, 2011, Cudnik moved to dismiss the declaratory judgment action in its entirety pursuant to Rule 12(b)(6). Liberty Mutual then moved to strike Cudnik's motion as impermissible on the basis that she had already filed a responsive pleading and, therefore, the motion was not timely.

On July 29, 2011, the district court denied Liberty Mutual's motion to strike. *Liberty Mut. Fire Ins. Co. v. Bohms*, No. 1:10-cv-1158, 2011 WL 3268608, at \*3 (W.D. Mich. July 29, 2011). While the court agreed that Cudnik's motion was untimely, it found that the appropriate remedy was not to strike the motion but to treat it as a motion filed under Rule 12(c). *Id.* at \*2. Next, the court construed the motion in light of Rule 12(d), which provides that, where matters outside the pleadings are presented to and not excluded by the court, a Rule 12(c) motion should be treated as one for summary judgment under Rule 56(a). *Id.* at \*3. Because matters outside the pleadings were central

to Cudnik's arguments, the district court determined that it would not exclude those matters and would convert Cudnik's 12(b)(6) motion into a summary judgment motion. *Id.*

The district court then applied the five-factor test used in this circuit to determine whether a court should exercise its discretionary jurisdiction to render a declaratory judgment. *Id.* at *4. The court found, upon weighing all relevant factors, that rendering a declaratory judgment would be inappropriate. *Id.* at *8. In particular, the district court concluded that Liberty Mutual filed the present action for the purpose of "procedural fencing and to win a race for res judicata." *Id.* The court also found that a declaratory judgment would not settle the matter and that the Florida courts were better positioned to resolve the parties' dispute. *Id.* Accordingly, the district court declined to exercise its declaratory judgment jurisdiction and dismissed Liberty mutual's action. *Id.* This appeal followed.

**II.**

We review a district court's decision to decline jurisdiction over a declaratory judgment action for abuse of discretion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). According to the Supreme Court, the Act vests federal courts with "unique and substantial discretion in deciding

whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In other words, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* at 288. District courts are afforded such discretion "because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289.

In reviewing a district court's decision whether to exercise this discretion, we focus on five factors:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). The district court considered each of these factors in the context of this case, ultimately concluding that they weighed against the exercise of declaratory judgment jurisdiction. Finding no error in the district court's analysis, we affirm.

**1. Whether the declaratory judgment would settle the controversy**

As to the first factor, the district court found that the declaratory judgment would not settle the present controversy. *Bohms*, 2011 WL 3268608, at *5. While such a judgment would clarify the parties' rights and obligations, if any, under the Liberty Mutual policy, the district court pointed out that "the controversy is larger than just the rights and obligations under the policy." *Id.* at *4.

In particular, regardless of whether Liberty Mutual was obligated to Cudnik under the policy, "declaratory judgment would not settle the questions of whether Liberty Mutual acted in bad faith, or whether Liberty mutual made fraudulent misrepresentations, or whether Liberty Mutual breached its fiduciary duties."[2] *Id.* The district court found, therefore, that this factor weighed strongly against the exercise of jurisdiction. We find no error in this conclusion.

### 2. Whether declaratory judgment would serve a useful purpose in clarifying the legal relations at issue

The district court and the parties agreed that declaration of the parties' rights and obligations under the policy would serve a useful purpose in clarifying the legal relations at issue. *Id.* at *5. Accordingly, the court found that this factor weighed in favor of exercising jurisdiction. *Id.*

### 3. Whether the declaratory remedy is being used to gain a procedural advantage

Next, the court considered whether the declaratory remedy was being used merely for the purpose of "procedural fencing or to provide an arena for a race for res judicata." *Id.* The district court credited Cudnik's desire to pursue Florida state-law claims against Liberty Mutual in a Florida court. *Id.* Cudnik gave the sixty-day notice required by Florida statute and indicated a willingness to discuss settlement options with Liberty Mutual. *Id.* The district court was especially troubled by the timing of Liberty Mutual's declaratory judgment action, noting that the action was filed on the

---

[2] The district court did, however, acknowledge that if Liberty Mutual was not obligated to Cudnik under the policy, that these additional determinations would, in all likelihood, be fairly straightforward, as "Liberty Mutual's denial would almost certainly not have been in bad faith, its representations almost certainly not fraudulent, and its fiduciary duties almost certainly not . . . breached." *Bohms*, 2011 WL 3268608, at *4. Nevertheless, the court would still be required to make such determinations, applying Florida law, and the declaratory judgment would not, then, have settled the controversy. *Id.*

fifty-ninth day of the sixty day notice period. *Id.* The court discussed at length why this factor weighed strongly against the exercise of jurisdiction.

First, the district court posited that "the sole reason that this matter is before [the district court] rather than before a court in Florida is that Liberty Mutual was able to take advantage of [the sixty-day notice] period to win a race to the courthouse." *Id.* The court acknowledged Liberty Mutual's argument that "there is nothing particularly strategic—or unusual—about an insurer using the declaratory judgment remedy to resolve questions of insurance coverage." *Id.* at *6. But according to the district court, "[w]hat is unusual, and strategic, is waiting for an injured third party to announce its clear preference for, and intention to file in, another court before an insurer requests the declaratory judgment." *Id.* We agree.

Liberty Mutual insists that it had legitimate reasons for filing in Michigan and, indeed, the fact that the named insured is a Michigan resident tends to support this contention. However, as aptly noted in the district court's opinion, the concern is not that the forum is improper, as the rules of civil procedure would provide an independent remedy for such an error. Rather, "the concern is that the declaratory judgment action not be used to allow the 'natural defendant' to preempt the 'natural plaintiff's' choice of forum." *Id.* at *6 (citing *Casualty Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989)). We agree with the district court that exercising declaratory judgment jurisdiction in this case would run counter to this goal and, thus, this factor weighs against the exercise of such jurisdiction.

**4. Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach on state jurisdiction**

The district court also found that the fourth factor, which considers whether the declaratory action threatens to disrupt the balance of power between state and federal courts, weighed against the exercise of jurisdiction. The district court properly considered the three sub-factors that this circuit uses in its determination of the fourth factor, which are:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814-15 (6th Cir. 2004).

As to the first two sub-factors, the district court found that resolving the rights and obligations of the parties in this case would require a court to make "factual determinations regarding the status of the Bohms' New Yorker at the time of the accident, the status of the Mustang as a temporary substitute auto under the policy, Jacob Bohms' status as a member of his father's household, and possibly the agreements made among the various players—both parties to this suit and non-parties." *Bohms*, 2011 WL 3268608, at *7. Further, the court found that "a court sitting in Florida would be better situated to evaluate those factual issues." *Id.* The district court noted that the Florida state courts oversaw the underlying litigation, and would thus be familiar with its factual nuances and "would be more convenient for potential witnesses and whatever evidence remains from the underlying litigation." *Id.* Finally, as to the third sub-factor, the district court stated that "whatever reasons the State of Florida had for adopting a notice requirement as a prerequisite for a

bad faith claim, among them was almost certainly *not* a desire to transfer the adjudication of Florida bad faith claims to federal district courts in other states." *Id.* Rather, the district court concluded, "[d]eterminations of whether an insurance company engages in bad faith under Florida law are best left to Florida courts." We agree, and we find that the district court properly weighed this factor as cautioning against the exercise of jurisdiction.

### 5. Whether there is an alternative remedy that is better or more effective

As to the fifth and final factor, the district court determined that a state declaratory judgment would be a better and more effective remedy than a federal declaratory judgment because a Florida court "would be in a better position to determine whether the policy is governed by [Florida] law or [] the State of Michigan and to determine whether extra-contractual remedies apply." *Id.* at *8. The district court pointed out that where "the issues presented involve questions of state law only, the state court is . . . in a superior position to resolve the case." *Id.* (quoting *Bituminous*, 373 F.3d at 816). In addition, "when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner," the need for declaratory judgments in federal court is especially questionable. *Id.* (citing *Bituminous*, 373 F.3d at 816-17). Given that the Florida courts' ability to resolve the parties' dispute fairly and impartially has not been called into question, the district court concluded that better remedies were available and, consequently, that the fifth factor weighed against exercising jurisdiction. We find no abuse of discretion in this determination.

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.