*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0158P (6th Cir.)
File Name: 00a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SCOTTSDALE INSURANCE
COMPANY,
      *Plaintiff-Appellant,*

      *v.*

BEVERLY ROUMPH,
Individually and as Next
Friend of Lavina Roumph;
LAVINA ROUMPH,
      *Defendants-Appellees.*

No. 98-1950



Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-73396—Gerald E. Rosen, District Judge.

Argued: March 8, 2000

Decided and Filed: May 4, 2000

Before: WELLFORD, SILER, and GILMAN, Circuit
Judges.

1

————————————

**COUNSEL**

**ARGUED:** Ronald S. Lederman, SULLIVAN, WARD, BONE, TYLER & ASHER, P.C., Southfield, Michigan, for Appellant. Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellees. **ON BRIEF:** Ronald S. Lederman, Thomas L. Auth, Jr., SULLIVAN, WARD, BONE, TYLER & ASHER, P.C., Southfield, Michigan, for Appellant. Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellees.

————————————

**OPINION**

————————————

HARRY W. WELLFORD, Circuit Judge. In 1995 defendant herein, Beverly Roumph, as next friend for Lavina Roumph, filed a state tort action in the Wayne County Circuit Court in Michigan, based upon a sexual assault upon her young daughter. Ms. Roumph alleged that she had accepted minor Keith Kelley, Jr., into her home as a foster child upon placement by The Children's Center, a Michigan social welfare agency. Within a month, Kelley raped four-year-old Lavina Roumph, defendant's daughter. Roumph's second amended complaint in the state action alleged negligence and/or gross negligence by The Children's Center in failing to disclose pertinent information regarding possible danger to her and the foster family; failing to warn the foster family that Kelley had been sexually abused and had a history of molesting other children; failing properly to review his file;[1] and failing to properly recommend and provide psychiatric or psychological treatment for Kelley. Scottsdale Insurance Company ("Scottsdale"), plaintiff in this proceeding, insured

---

[1] We recite the names of the minors with considerable reluctance, but they have been made public in prior state proceedings and in the district court by defendant Roumph.

The Children's Center and provided its defense under a reservation of rights in the state proceeding. The Scottsdale policy with The Children's Center provided general liability coverage of $3,000,000 but contained a "Sexual Misconduct Limitation Endorsement" which limited coverage to $100,000:

> "Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured, whether committed by, caused by or contributed to by failure of any insured to:
>
> 1.   Properly train, hire or supervise any employee, or;
>
> 2.   Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.

In the state court proceedings the issue arose as to whether Scottsdale's applicable policy limits in the case were $3,000,000 or only $100,000 under the special endorsement. Scottsdale filed this declaratory action under 28 U.S.C. § 2201 in the United States District Court for the Eastern District of Michigan on July 14, 1997, seeking a ruling on applicable limits in the state court action.

At the beginning of the state trial, The Children's Center, with Scottsdale's consent, admitted liability, and the parties on February 2, 1998, made the following agreement:

> *One, Children's Center will admit liability. Two, case will proceed against Children's Center as to damages only.* Three, the individual defendants, Wheeler, Skowronski, and Potje will be dismissed with prejudice without a release.
>
> . . . .

*Four, plaintiffs will not seek to enforce any judgment against Children's Center over and above the insurance policy limits.*

Five, defendants Wheeler, Skowronski and Potje were employees of the Children's Center during their respective periods of employment and acted within the scope of employment as to the matters in this action.

. . . .

That nothing contained in this agreement eviscerate any coverage under the existing insurance policy, including any taxable costs or interest.

. . . .

*This agreement is predicated upon the representation that Children's Center has a liability policy with $3 million general limit and a $100,000 sexual misconduct limit that is covering this occurrence and that the only claim regarding the extended coverage is that claim currently stated in the pending declaratory judgment action.*

(Emphasis added.)  Co-defendant Lula Belle Stewart Center, Inc., alleged agent of The Children's Center, was dismissed from the suit with prejudice and without costs per a March 20, 1998 order after settling with Roumph for $1,000,000, the amount of its separate insurance liability coverage.  Due to the stipulation entered in the state court, Scottsdale asserts that it was not necessary to offer evidence regarding the nature and extent of negligence of the insured as "defined by the admitted factual and legal allegations in the First Amended Complaint filed in the state court action."

The state court jury returned an $8,000,000 verdict for Roumph on February 12, 1998, and a judgment was entered on June 12, 1998, whereby Roumph reportedly recovered the net amount of $6,233,857.32.  After entry of judgment but while a motion for new trial and a motion for remittitur were

breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. . . .  When all is said and done, we have concluded, "the propriety of a declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Wycoff, supra,* [344 U.S.] at 243.

. . . .

We agree, for all practical purposes, with Professor Borchard, who observed half a century ago that "[t]here is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment action.  Borchard, Declaratory Judgments, at 313.  By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

*Wilton*, 515 U.S. at 286-88 (citations and footnote omitted).  We believe that the district court properly considered the circumstances involved in whether to exercise its discretion to issue a declaratory judgment in a dispute pending in state court.  It exercised its discretion not to entertain the case.  In reaching that result, we cannot say that the district court did not employ "the sound exercise of its discretion" under the circumstances.  *Wilton*, 515 U.S. at 288.

Accordingly, we **AFFIRM** the decision of the district court.

This case is a close one considering the factors we have relied upon in cases of this kind. We see no indication of an attempt to delay by the insurance carrier through the declaratory action in federal court; and a prompt declaration of policy coverage would surely "serve a useful purpose in clarifying the legal relations at issue." It is hard to perceive of "an alternative remedy that is better or more effective."

The district court, however, pointed to a factor that supports its decision not to proceed--that "there are no reported decisions in Michigan or elsewhere construing the language of [the] 'sexual misconduct' endorsement." The district court concluded from this factor that it would be inappropriate "to preempt the right of the state court to rule on a previously undetermined question of state law." *Omaha Property & Casualty*, 923 F.2d at 448; *see also American Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986). What is involved in this case is an interpretation of a special contract of insurance. Indeed, had the district court undertaken the task of legal interpretation, we might be in a position to decide whether the policy limits should be $100,000, rather than $3,000,000. Such a result might, of course, "increase the friction between our federal and state courts." This is not to say that a district court should always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion.

We turn to the latest Supreme Court discussion of this issue in *Wilton*:

Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (1988 ed., Supp. V) (emphasis added). The statute's textual commitment to discretion, and the

pending, Roumph, on February 17, 1998, filed a motion for a stay or dismissal in the district court. Scottsdale filed a response and, following a hearing, the district court granted Roumph's motion and dismissed the action without prejudice in August of 1998. The district court also dismissed, without prejudice, the parties' cross-motions for summary judgment. Scottsdale timely filed a notice of appeal.

It is important to note that Scottsdale also appealed the state court judgment on behalf of its insured, The Children's Center,[2] and that appeal is presently pending before the Michigan Court of Appeals. Roumph has filed a declaratory judgment action in the Michigan state court seeking a ruling on the coverage issue, but the record does not reflect when that action was filed, and the state court has not yet taken action on the case.

We are presented with the issue, not a new one from Michigan, of whether the district court abused its discretion in declining to entertain plaintiff Scottsdale's declaratory judgment action, which sought a ruling on the applicable policy limits for its pending state court tort action.

This court reviews the district court's exercise of discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), for abuse of discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) (replacing *de novo* standard applied in, *e.g., Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990)). Plaintiff relies upon *Allstate Ins. Co. v. Green*, 825 F.2d 1061 (6th Cir. 1987), wherein this Court held that no *per se* rule applied to prevent district courts from exercising jurisdiction over declaratory actions in circumstances somewhat akin to this one. Under *de novo* review, this Court reversed the district court's dismissal of the declaratory action because the district judge "failed to exercise any discretion, but felt himself bound to dismiss based on our decisions in

---

[2]Paula Skowronski, Eveldora Wheeler, Steve Potje, and The Children's Center were named defendants in Roumph's motion for abstention. However, the notice of appeal includes only the parties listed.

*American Home* and *Manley, Bennett*," and the Court remanded "to permit that court to assess the propriety of the action pursuant to the general considerations, as well as the five-factor test." *Green*, 825 F.2d at 1065, 1067 (citing *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462 (6th Cir. 1986) (*de novo* review)); *see Mercier*, 913 F.2d at 277 ("When the record contains no indication that the district court considered these criteria and factors, this court has the option either to apply them on appeal or to remand to the district court for this exercise.").

Several of the cases mentioned from Michigan involved insurance carriers seeking a declaratory judgment in federal court about defense and coverage when their insureds have been sued for alleged tort liability in state court concerning situations perceived as a "race to the courthouse," state or federal, for a declaratory judgment determination. In many of these cases we decided that not proceeding in the federal case was the wise and rational course of action. As pointed out by the district court, we have generally considered five factors to assess the propriety of the federal court's exercise of discretion in such a situation:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Omaha Property &Casualty Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir. 1991); *Mercier*, 913 at 277; *Grand Trunk W. R.R. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

The district court also considered concerns about federalism expressed in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and added additional factors to consider including:

1.  whether the underlying factual issues are important to an informed resolution of the case;

2.  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

3.  whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

The district court emphasized the importance of a "well-developed factual record" in the state court. We believe, however, that this emphasis was misplaced in this case because liability was stipulated in state court, indicating a concession about the nature of the minor Kelley's known background and proclivity so far as the placement center was involved, as well as the character of his sexual offense in the foster home. Had the district court exercised its discretion by electing to proceed, we doubt that this would have constituted "'gratuitous interference with the orderly and comprehensive disposition of a state court litigation'" as in *Grand Trunk,* 746 F.2d at 326 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). The defendant Roumph's delay in seeking declaratory judgment in state court, moreover, removed any consideration of a race to the courthouse steps for a *res judicata* decision in this controversy. A declaratory decision should "settle the controversy" about the extent of insurance coverage, whether undertaken in state or federal court.