Khalil **PAKIDEH**; and Alma Investments, Inc., a Michigan Corporation, Plaintiffs,

v.

Abolhassan **AHADI**, Defendant.

No. 99–CV–74424–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 25, 2000.

Bruce R. Byrd, Detroit, MI, for Plaintiffs.

S. Thomas Wienner, Bloomfield Hills, MI, for Defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

DUGGAN, District Judge.

This controversy involves ownership rights in the Bahia Mar Resort and Convention Center on South Padre Island, Texas. Alma Investments, Inc., of which plaintiff Khalil Pakideh is the sole shareholder, director, and officer, currently owns one hundred percent of the Bahia Mar.[1] Defendant Abolhassan Ahadi, however, contends that he and plaintiff entered into an agreement by which plaintiff promised him the right to purchase a fifteen percent ownership interest in the Bahia Mar in exchange for defendant's agreement to manage the resort.

After defendant made demands to enforce the alleged agreement, plaintiff filed suit in this Court on September 10, 1999, seeking a declaratory judgment that "no enforceable contract was ever entered into between [plaintiff] and [defendant]." (Compl. at 5, ¶ 3). On September 15, 1999, defendant filed a separate breach of contract action against plaintiff in the District Court of Cameron County Texas, which was eventually removed to the United

---

1. Alma Investments was originally named as a plaintiff to this action. On April 7, 2000, however, this Court granted Alma Investment's motion for voluntary dismissal.

States District Court for the Southern District of Texas.

In an Opinion and Judgment dated April 7, 2000, this Court denied defendant's motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, but granted defendant's motion to dismiss this action as duplicative of defendant's breach of contract action pending in the Southern District of Texas. Plaintiff now seeks reconsideration of this Court's April 7, 2000 decision dismissing this action as duplicative.

### Discussion

A motion for reconsideration will not be granted if it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." E.D.Mich.L.R. 7.1(g). "The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.* Plaintiff identifies two allegedly palpable defects with this Court's April 7, 2000 decision, namely the Court's findings "(1) that [p]laintiffs filed this suit in anticipation of [d]efendant's Texas suit; and, (2) that, because this is essentially a breach of contract dispute, the invocation of the Declaratory Judgment Act would be inappropriate." (Pl.'s Br. at 1) (citations omitted). The Court, however, finds plaintiff's arguments to be unpersuasive and, accordingly, plaintiff's motion for reconsideration shall be denied.

### 1. Anticipation of Litigation

In its April 7, 2000 Opinion, this Court stated that "[p]laintiffs clearly filed the instant declaratory judgment action in anticipation of a breach of contract action by defendant." (4/7/00 Op. at 13). The Court's statement was based upon the fact that the instant action was filed sixteen days after defendant made demand upon plaintiff, but fourteen days before the demand period expired. Plaintiff now contends that "[t]he Court simply did not have all the facts before it when it made this determination." (Pl.'s Br. at 3).

According to plaintiff, he and defendant had been engaged in discussions regarding the subject matter of this dispute for years, and *"[o]n at least three separate occasions over the course of at least two years,* [d]efendant had threatened to bring suit against [plaintiff] if [plaintiff] did not transfer 15% of his shares in Alma to [d]efendant." (*Id.*) (emphasis in original). Plaintiff directs the Court's attention to three separate letters threatening litigation on behalf of defendant. In the first letter, dated October 27, 1997, defendant stated:

> If I do not receive my stock shares, on January 1, 1998, it is my intent to cease operating the facility and to sue Khalil Pakideh. I do not want to sue, as it is never right to sue family. However, after 6 years of trying to resolve my partnership I now find it necessary to insure the future of my spouse and children through the court system.

(Pl.'s Br., Ex. 2).

In the second letter, dated July 16, 1999, counsel for defendant made "Mr. Ahadi's final demand for [plaintiff's] performance in the sale and transfer of the stock no later than thirty (30) days from [plaintiff's] receipt of this letter." (*Id.*, Ex. 3). According to plaintiff, "[h]ad [his] motivation been to win the race to the courthouse, he would not have let the thirty-day window, and a specific threat of litigation, pass" before filing the instant suit in September of 1999. (*Id.* at 3).

In the third letter relied upon by plaintiff, dated August 25, 1999, counsel for defendant made demand upon plaintiff for damages in the amount of $1,405,200.45 resulting from plaintiff's failure to transfer the stock as demanded in the July 16, 1999 letter. (*Id.*, Ex. 4). According to plaintiff, he filed suit approximately two weeks after receiving this letter "not because of the threat of litigation, but because, based on the status of discussions and the tortured

history of the dispute, the letter signaled that there no longer remained a realistic chance for an amicable settlement." (*Id.* at 4).

The Court, however, is not persuaded that its finding was a "palpable" defect. Notably, the October 27, 1997, letter relied upon by plaintiff was written by defendant himself, not counsel. It is reasonable to assume that plaintiff did not consider the October 27, 1997 letter to be a threat of imminent suit. Furthermore, the Court finds the fact that plaintiff did not immediately file suit after receiving defense counsel's July 16, 1999 demand for *performance* of the alleged agreement, but waited until after defense counsel's August 25, 1999 demand for *damages for breach* of the alleged agreement, unpersuasive.

As plaintiff himself acknowledges, it was not until after he received defendant's August 25, 1999 letter demanding damages in the amount of $1,405,200.45 that he believed "there no longer remained a realistic chance for an amicable settlement." (Pl.'s Br. at 4). Plaintiff's statement suggests to this Court that prior to receiving defendant's August 25, 1999 letter, plaintiff believed that an amicable settlement could be reached and that litigation was not imminent; however, after receiving the August 25, 1999 letter, plaintiff believed that litigation was imminent. It is certainly reasonable to conclude that plaintiff expected defendant to institute litigation if his demand for damages was not met.

**2.** Plaintiff is incorrect in his assertion that "the Sixth Circuit reviews a district court's exercise of discretion under the DJA under a *de novo* standard of review." (Pl.'s Br. at 4 n. 2). In *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 967 (6th Cir.2000), the Sixth Circuit expressly recognized that the United States Supreme Court's decision in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289–90, 115 S.Ct. 2137, 2143–44, 132 L.Ed.2d 214 (1995), replaced the *de novo* standard applied in *Allstate Ins. Co. v. Mercier,* 913 F.2d 273 (6th Cir.1990), with an abuse of discretion standard.

Even assuming that this finding was a "palpable" defect, the Court is nonetheless satisfied that a declaratory judgment action is not the appropriate vehicle with which to resolve this matter and, therefore, correction of such defect would not result in a different disposition of this case.

**2. Appropriateness of Declaratory Judgment Action**

■■■ District courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995).[2] Generally, a district court should consider five factors in assessing whether to exercise its discretion in such cases:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata* ";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;[3] and

(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 968 (6th Cir.2000).

Although a declaratory judgment action may serve a useful purpose in clarifying

The Court acknowledges that it incorrectly cited the Fifth Circuit's decision in *Magnolia Marine Transp. Co. v. Laplace Towing Corp.,* 964 F.2d 1571 (5th Cir.1992), as a Sixth Circuit decision. The Court, however, is satisfied that correcting such error does not mandate a different disposition of this case.

**3.** Of course, this factor does not play a significant role in this Court's decision in this case as defendant's breach of contract action is pending in another United States District Court.

the legal relations of these parties, and a judgment may settle this controversy, the Court believes that the breach of contract action currently pending in the Southern District of Texas is a better and more effective remedy. Contrary to plaintiff's contentions, the Court is not persuaded that this case is "unique" or anything more than a "simple contract-enforcement dispute." Many breach of contract disputes involve, as an initial matter, the issue of whether a contract even exists. This Court has no reason to believe that the Southern District of Texas is less capable of deciding such an issue.

As recognized by the Sixth Circuit:

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration,' 28 U.S.C. § 2201(a) (1988 ed., Supp. V) (emphasis added). The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. . . . When all is said and done, we have concluded, 'the propriety of a declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" [*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952) ].

\*    \*    \*    \*    \*    \*

We agree, for all practical purposes, with Professor Borchard, who observed half a century ago that [t]here is . . . nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court' to hear a declaratory judgment action. Borchard, Declaratory Judgments, at 313. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. *Scottsdale Ins. Co.*, 211 F.3d 964, 969 (quoting *Wilton*, 515 U.S. at 286–88, 115 S.Ct. at 2142–43 (citations and footnote omitted)). Because the Court is convinced that the breach of contract action currently pending in the Southern District of Texas is a more appropriate and effective remedy for this dispute, it shall, in the sound exercise of its discretion, deny plaintiff's motion for reconsideration.

### *Conclusion*

■ A motion for reconsideration that merely reasserts the same facts and legal arguments previously asserted is not proper unless there has been some defect in the first hearing by which the court and parties have been misled. As stated in *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D.Va.1977):

Whatever may be the purpose of [a motion for reconsideration] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.

Since the [movant] has brought up nothing new—except his displeasure—this court has no proper basis upon which to alter or amend the order previously entered. The judgment may indeed be based upon an erroneous view of the law, but, if so, the proper recourse is appeal—not reargument.

*See also Dana Corp. v. United States*, 764 F.Supp. 482, 489 (N.D.Ohio 1991).

The Court is satisfied that plaintiff has raised no new issues entitling him to relief

from this Court's April 7, 2000 Opinion and Judgment. Accordingly,

**IT IS ORDERED** that plaintiff's motion for reconsideration is **DENIED.**